DA 13-0709

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 272

ELDORADO CO-OP CANAL CO.,

  Claimant and Appellee,

LOWER TETON JOINT OBJECTORS,

  Objectors and Appellants,

NOIA: TETON COOP RESERVOIR CO.,

FARMERS COOPERATIVE CANAL CO.,

  Objector, Appellee and Cross-Appellant,

 and

PATRICK SAYLOR,

  Intervenor and Cross Appellant.

APPEAL FROM: Montana Water Court, Cause No. 41O-129A
      Honorable Russ McElyea, Presiding Judge

COUNSEL OF RECORD:

   For Appellants:

     Stephen R. Brown, Garlington, Lohn & Robinson, PLLP,
     Missoula, Montana

   For Appellee Eldorado Coop Canal Company:

     John E. Bloomquist, Bloomquist Law Firm, PC, Helena, Montana

   For Farmers Coop Canal Company and Patrick Saylor:

     Michael J. L. Cusick, Abigail R. Brown, Moore, O'Connell
     & Refling, P.C, Bozeman, Montana

For Amicus:

Peter G. Scott, Gough, Shanahan, Johnson & Waterman, PLLP, Bozeman, Montana

Submitted on Briefs: July 30, 2014
Decided: October 7, 2014

Filed:

Clerk

2

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Monte Giese, Steven Kelly and William Reichelt, often referred to as the Lower Teton Joint Objectors, and Patrick Saylor, intervenor, all appeal from the Water Court's "Order Amending Master's Report and Adopting as Amended," in Water Court Case 41O-129.

¶2     We restate the Issues as follows:

¶3     Issue One:  Did the Water Court err in amending the Water Master's Report finding that Saylor was a party to an historical water exchange or substitution plan under which he provided the source of carriage water used to deliver water to Choteau Cattle Company through the Bateman Ditch?

¶4     Issue Two:  Did the Water Court err by including Choteau Cattle on the tabulation of water rights authorized to divert water from the Teton River into the Bateman Ditch under a water rights exchange or substitution plan not claimed by any person?

¶5     Issue on Cross-Appeal:  Whether water rights in addition to Choteau Cattle can be diverted down the Bateman Ditch.

¶6     We affirm in part and reverse in part.

## BACKGROUND

¶7     Monte Giese, Steven Kelly and William Reichelt are water users who hold appropriation rights from the lower Teton River in Chouteau County, Montana.  In 2011 they commenced an action in the Montana Ninth Judicial District Court against the Water Commissioners appointed by the District Court to administer certain water rights diverted

3

from the Teton River pursuant to the 1908 water rights decree in *Perry v. Beattie*, Cause 371, Ninth Judicial District Court. The water rights claimed by Giese, Kelly and Reichelt were not included in the *Perry* decree, which involved only rights diverted upstream near Choteau, Montana. Giese, Kelly and Reichelt claimed that the Water Commissioners' practice of diverting water out of the natural channel of the Teton River and into the Bateman Ditch harmed their appropriation rights by depriving the Teton River aquifer of recharge water. They ultimately sought relief under § 85-2-406(2)(b), MCA, which allows a district court to certify a dispute to the Chief Water Judge (the Water Court) for a determination of rights when the dispute involves water rights not all of which have been conclusively determined in prior court decrees.

¶8 The District Court dismissed the petition and Giese, Kelly and Reichelt appealed. This Court reversed and remanded to the District Court with instructions to certify all appropriate issues to the Chief Water Judge as provided in § 85-2-406(2)(b), MCA. *Giese v. Blixrud*, 2012 MT 170, 365 Mont. 548, 285 P.3d 458. In December 2012 the District Court issued a certification notice requesting that the Water Court "make a determination of all existing rights to divert water to the ditch commonly known as the Bateman Ditch."

¶9 The Water Court, with the agreement of the parties, determined to resolve the certified issues in the context of Water Court Case 41O-129, which involved certain Teton River water right claims by the Eldorado Coop Canal Company, along with the objections to those claims. The parties to Case 41O-129 had conducted an evidentiary hearing in June 2012 just prior to this Court's decision in *Giese*. The parties agreed that

4

the record of that hearing could serve as the evidentiary basis for resolving the certified question from the District Court involving the Bateman Ditch, while reserving resolution of any other issues relating to the Eldorado claims.

¶10 In February 2013 the Water Master issued the "Master's Report Regarding the Bateman Ditch Case 41O-129," including findings of fact and conclusions of law regarding use of the Bateman Ditch. Parties filed objections to the Master's Report, and in June 2013 the Water Judge issued the "Order Amending Master's Report and Adopting as Amended." In summary, the Water Court found that two of the Water Master's findings of fact were not supported by substantial evidence in the record and should be modified. The Water Court also found that Saylor had a protectable right to divert Teton River water through the Bateman Ditch to the downstream diversion point of the Choteau Cattle Company as a water conservation measure, while exercising his own appropriation rights from the Teton. Both Saylor and the Lower Teton Joint Objectors[1] appeal.

¶11 The Teton River rises in the Rocky Mountain Front in west central Montana and flows eastward for almost two hundred miles before joining the Marias River and soon thereafter the Missouri River. Giese, Kelly and Reichelt use water from the lower or downstream portion of the Teton near Fort Benton, Montana. They claim generally that they are damaged by diversion of water into the Bateman Ditch on the upstream portion

---

[1] The "Lower Teton Joint Objectors" is not an actual organization, but only a reference to Giese, Kelly and Reichelt, who have water rights on the Lower Teton and who object to some diversions through the Bateman Ditch.

of the Teton near Choteau, Montana, and that their "calls" on upstream appropriators to release water for their downstream use have been ignored.

¶12　The dispute arises at least in part from the 1908 decree in *Perry*.[2] That case determined the priority date and flow rate of about 40 water right claims in the upper Teton River west of Choteau and far upstream from Giese, Kelly and Reichelt. The District Court appointed Water Commissioners to administer the water rights decreed in *Perry*, as provided in § 85-5-101, MCA. The majority of water users on the Teton (and their successors in interest, including downstream users Giese, Kelly and Reichelt) were not parties to the *Perry* case. Giese, Kelly and Reichelt claim water rights from the Teton with priority dates that are senior to or contemporary with the upstream rights decreed in *Perry*. Water right claimants on the Teton are participating in the Water Court's on-going adjudication of water rights under Title 85, chapter 2 of the Montana Code. The Water Court issued its Temporary Preliminary Decree of water rights from the Teton in December 2005 but has not issued a final decree.

¶13　About 1950 (the exact date has not been established), the Water Commissioner appointed by the District Court to administer the *Perry* decree began from time to time diverting most or all of the flow of the Teton River out of its natural channel and into the Bateman Ditch. That ditch runs roughly parallel to the natural channel of the Teton River and bypasses a stretch of the river channel several miles long that is sometimes referred to as the Springhill Reach. The Reach is an area of natural gravel riverbed west of Choteau, and a significant amount of the water flowing through it will seep into the

---

[2] Teton County is now part of the Ninth Judicial District.

ground. The Bateman Ditch diversion eliminates the seepage of water in the Reach and the water can be used from the ditch or returned to the natural channel. This diversion practice was not established pursuant to any written agreement among appropriators or any express order of the District Court.

¶14 Intervenor Saylor has *Perry* decree rights to use up to 1500 miner's inches[3] of water from the Teton River. Saylor uses the Bateman Ditch as the point of diversion for his decreed rights, and the Ditch crosses his land. Eldorado diverts water from the Teton River above the Bateman Ditch pursuant to its *Perry* decree rights. Eldorado distributes water through canals to its members.

¶15 The right to 300 miner's inches of water from the Teton now held by the Choteau Cattle Company is the most senior right in the *Perry* decree, with a priority date in 1876. Choteau Cattle's point of diversion is the Burd Ditch, the headgate for which is located just downstream from both the Springhill Reach and the point where water diverted into the Bateman Ditch re-enters the Teton River channel. While Choteau Cattle can often divert its water right out of the natural flow of the Teton River via the Burd Ditch, that is not possible during times of low flow because the water seeps into the ground in the Springhill Reach. While Choteau Cattle's *Perry* right is for 300 miner's inches of water, a significant multiple of that amount has to flow through the Reach for Choteau Cattle to be able to divert its right from the natural river flow.

---

[3] A miner's inch is a method of measuring the flow of water, and 100 inches is equivalent to 2.5 cubic feet of water per second. Section 85-2-103, MCA.

¶16 Diversion of water through the Bateman ditch and returning it to the natural channel just above the Burd Ditch is a way in which Choteau Cattle has exercised its water right. The proponents of diverting Choteau Cattle's right through the Bateman Ditch are holders of junior *Perry* decree rights. When Choteau Cattle's water is delivered through the Bateman ditch, the effect is to leave water in the natural channel above the Springhill Reach that can be used by *Perry* right holders junior to Choteau Cattle. If the Bateman Ditch were not used to deliver water to Choteau Cattle during times of low flow, upstream junior right holders (including Saylor and Eldorado) would have to forego or greatly curtail their water use.

¶17 There are no apparent records of how often the Bateman Ditch diversion is used each irrigation season to deliver water to Choteau Cattle. The diversion is not required in times of higher water flows in the Teton River, and the frequency of its use has been described as occasional or sporadic.

¶18 Earlier in the water rights adjudication process both Eldorado and Choteau Cattle claimed the Bateman Ditch as a point of diversion of their water rights from the Teton River. Both of those entities for their own reasons have now specifically disclaimed the Bateman Ditch as a point of diversion. Choteau Cattle disclaimed the Bateman Ditch as a point of diversion for its decreed right out of a concern that it would have less water available at its headgate at the Burd Ditch because of ditch losses in the Bateman Ditch. Saylor is now the only claimant in this matter who specifically designates the Bateman Ditch as its point of diversion from the Teton River.

8

¶19    Giese, Kelly and Reichelt challenge the Water Commissioner's practice of diverting the flow of the Teton River into the Bateman Ditch to avoid the Springhill Reach. They contend that their water rights are senior to the rights of many upstream *Perry* decree rights and that their rights predate the Water Commissioners' diversion of the Teton through the Bateman Ditch. They contend that since the Bateman Ditch was not used to divert the entire river at the time of the *Perry* decree, the Water Commissioner lacked the authority to make the decision to do so. They contend that they are entitled to have the river flow in the natural channel in the condition it was in at the time their appropriations were perfected and that the natural channel flow cannot be altered if it adversely affects their rights. They contend that allowing the natural water seepage through the Springhill Reach is a key element in the hydrology of the Teton River; that it is essential to stable groundwater and springs; and that it is essential to their access to the Teton River water and to the exercise of their water rights.

¶20    Giese, Kelly and Reichelt acknowledge that it is proper to divert Teton River water into the Bateman Ditch as needed to fulfill the Saylor right. But they contend that diversion of any water in addition to that needed for the Saylor right is not a beneficial use of water and is unlawful.

**STANDARD OF REVIEW**

¶21    This Court recently set out the standards of review in an appeal from the Water Court's review of a Water Master's report. *Heavirland v. State,* 2013 MT 313, ¶¶ 13-16, 372 Mont. 300, 311 P.3d 813; *Skelton Ranch, Inc. v. Pondera County Canal & Reservoir Co,* 2014 MT 167, ¶¶ 25-27, 375 Mont. 327, 328 P.3d 644. In summary, the Water Court

9

reviews the Water Master's findings of fact to determine whether they are clearly erroneous. The Water Court reviews the Water Master's conclusions of law to determine whether they are correct.

¶22 This Court reviews a Water Court decision under the same standards applied to District Court decisions. The Water Court's review of the Water Master's report is reviewed de novo as an issue of law, to determine whether its application of the standards of review is correct. *Skelton Ranch*, ¶ 26.

## DISCUSSION

¶23 *Issue One: Did the Water Court err in amending the Water Master's Report finding that Saylor was a party to an historical water exchange or substitution plan under which he provided the source of carriage water used to deliver water to Choteau Cattle Company through the Bateman Ditch?*

¶24 Both the Water Master and the Water Court determined that the practice of diverting the Teton River flow into Bateman Ditch in times of low water flow to deliver water to Choteau Cattle was a historic water conservation measure that should be recognized and allowed. The Water Master determined that the Bateman Ditch diversion was a practice or tool that the District Court and its Water Commissioners could use to manage the water rights on the Teton River. The Water Master concluded that the practice conserved water in the sense of making it available to junior right holders upstream from the Bateman Ditch who would otherwise have to allow water to flow down the River to get to the Choteau Cattle point of diversion at the Burd Ditch. The Water Court concluded that the Bateman Ditch diversion was more than just a water management tool but was a recognizable and protectable right held by Saylor.

10

¶25 The parties disagree about how to classify the Bateman Ditch diversion under Montana law. While water exchanges are recognized by statute, §§ 85-2-411 and -413, MCA, the Lower Users say that it was error for the Water Court to characterize the Bateman Ditch practice as an exchange agreement because there is no secondary source of water being introduced into the Teton River. The Water Master referred to the Bateman Ditch diversion as a "conservation measure" or water-saving measure in the sense that its effect is to make water available to upstream junior appropriators that might otherwise have to be allowed to pass down the channel to Choteau Cattle.

¶26 Both Saylor and Eldorado argue that the historical practice of using the Bateman Ditch to deliver water to Choteau Cattle should be recognized and confirmed. The Lower Users counter that the Water Court created a right not recognized in water law by establishing Saylor's ownership of the diversion practice. The Lower Users argue that because both Choteau Cattle and Eldorado abandoned the Bateman Ditch as a point of diversion, there is no longer any basis for recognizing a right to divert water through the Ditch to deliver water to Choteau Cattle. They note that Saylor alone now claims the right to divert water through the Bateman Ditch and Saylor's claim is limited to diverting his rights decreed in the *Perry* case. The Lower Users claim that using the Bateman Ditch diversion to deliver water to Choteau Cattle lacks any basis in law and should not be mentioned in any decree.

¶27 It is clear that Saylor has agreed with and supported diversion of water down the Bateman Ditch during times of low flow in order to deliver water to Choteau Cattle. The Bateman Ditch crosses his property and he uses it to exercise his water rights from the

11

Teton River. In addition, like other upstream users with rights junior to Choteau Cattle, he has gotten benefit of water availability that he would not otherwise enjoy.

¶28 The Water Master concluded that while there is evidence of 60 or more years use of the Bateman Ditch to deliver water to Choteau Cattle, the future use of the practice depends not upon its historical use but upon the authority of the District Court to administer water decrees for the benefit of all users. The Water Master determined that the "nature and extent of that authority is a question for the District Court" and that the District Court can decide whether it has authority to use the practice and if it is appropriate to use it "given the factual situation presented at that time." The Water Master correctly concluded that the district courts retain the authority to supervise the distribution of water among all appropriators. Sections 85-2-406(1) and 85-5-101, MCA. That includes enforcement of Temporary Preliminary and Preliminary Decrees of the Water Court. Section 85-5-101(1), MCA.

¶29 The Water Court, in its review of the Water Master's report, determined that use of a diversion ditch to avoid a "losing reach of a natural stream" can "rise to the level of a protectable interest." The Water Court determined that the use of the Bateman Ditch to deliver water to Choteau Cattle is similar to substituting a water source, using storage water, or changing the method of water delivery. The Water Court noted that Montana recognizes "exchange agreements" under which water stored in a reservoir can be discharged into a stream so that the water may be diverted from that stream by a water user who does not otherwise have rights in that stream. Section 85-2-413, MCA. *See also* § 85-2-411, MCA, allowing water to be turned into a natural stream channel and

12

diverted downstream. The Water Court concluded that "[r]ecognition of exchange plans, conservation measures and other innovations to maximize beneficial use of a limited resource is consistent with Montana's stated policy regarding water use," citing §§ 85-2-101(3) and 85-1-101(1), MCA.

¶30 The Water Court further determined that the Lower Teton Users' objections to the Bateman Ditch diversion based upon their claim that it harms their rights should not preclude recognition of the Bateman Ditch diversion. Those users can still go to court and seek relief if they can prove harm. *See e.g. Bostwick v. DNRC*, 2013 MT 48, ¶ 30, 369 Mont. 150, 296 P.3d 1154. The Water Court concluded that even though use of the Bateman Ditch to deliver water to Choteau Cattle is no longer part of any claim in the water adjudication process, that fact should not preclude recognition of the practice because water law recognizes "historic patterns of water usage." And the Water Court concluded that while the Bateman Ditch diversion is not an exchange plan, "it is typical of historic arrangements made throughout Montana and elsewhere in the western states to obtain maximum benefit from a limited resource. Such arrangements deserve recognition because they are consistent with Montana's state goal of conserving water resources."

¶31 We agree with the analysis of the Bateman Ditch diversion to deliver water to Choteau Cattle by the Water Master and the Water Court up to this point. However, the Water Court took the further step of apparently establishing the Bateman Ditch diversion as a right belonging to Saylor, stating: "Accordingly, this Court recognizes Patrick Saylor's right to use the Bateman Ditch in lieu of the natural channel of the Teton River to deliver water to CCC's head gate at the Burd Ditch."

¶32 By concluding that the Bateman Ditch diversion to supply water to Choteau Cattle is a private right held by Saylor, the Water Court reached a conclusion that is contrary to the statutory roles of the district courts and the water commissioners in administering and overseeing water rights. Section 85-5-101. MCA. Whereas the Water Court invested "Saylor with the option of delivering [the Choteau Cattle] claim . . . through the Bateman ditch, [but] he is not obliged to do so," that power rests in the District Court and its appointed Water Commissioner. It is not Saylor's right or duty to administer the water rights of others any more than it is the right or duty of Eldorado or any other upstream junior right holder.[4] That is a management tool available to the District Court and its Water Commissioner, as it has been for many decades on the Teton River.

¶33 We therefore remand to the Water Court to modify the decision to the extent that the District Court's Water Commissioner, under the supervision of the District Court, may determine whether and when to use the Bateman Ditch to deliver water to Choteau Cattle. If Giese, Kelly and Reichelt or any other downstream user claim adverse effects, they can seek relief in the District Court.

¶34 *Issue Two: Did the Water Court err by including Choteau Cattle on the tabulation of water rights authorized to divert water from the Teton River into the Bateman Ditch under a water rights exchange or substitution plan not claimed by any person?*

¶35 The Water Court's Order Amending Master's Report included a listing of water rights that "may be diverted into the Bateman Ditch." That list included the three Saylor rights totaling 1500 miner's inches or 37.5 cubic feet per second, as well as the Choteau

---

[4] The Bateman Ditch crosses Saylor's land, and the Water Master found that Saylor is the "acknowledged owner" of the Ditch.

Cattle right to 300 miner's inches or 7.5 c.f.s., as decreed in the *Perry* case. The order contains this list because the District Court's certification to the Water Court requested a "tabulation or list of the existing rights to use this [Bateman] ditch and their relative priorities." Therefore, it was entirely proper and responsive to the District Court's certification for the Water Court to provide a listing of water rights that can be diverted through the Bateman Ditch.

¶36 The Lower Users argue that it was improper to list Choteau Cattle's right because Choteau Cattle had specifically removed the Bateman Ditch as a point of diversion for its right, and the Water Court had accepted that removal. In addition, they argue that neither Saylor nor any other party claimed the right in the water adjudication process to use the Bateman Ditch to supply Choteau Cattle's right. But, since use of the Bateman Ditch to deliver water to Choteau Cattle is a management tool and not a right personal to Saylor, it does not matter whether he claimed the right to do so in the water right adjudication process. We conclude that the Water Court acted properly in listing the water rights that can be diverted through the Bateman Ditch.

¶37 *Issue on Cross-Appeal: Whether water rights in addition to Choteau Cattle can be diverted down the Bateman Ditch.*

¶38 This involves two other water right claims, and Saylor asserts that they should also be listed in the tabulation of rights that can be diverted through the Bateman Ditch. The Water Court declined to list these rights after finding that they had only rarely been diverted down the Bateman Ditch. In addition, the owners of those rights are not

15

involved in this appeal. We agree with the Water Court's conclusions and decline to consider this issue further.

¶39 The decision of the Water Court is affirmed in part, reversed in part and remanded to the Water Court for further proceedings.

/S/ MIKE McGRATH

We Concur:

/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ JIM RICE