No. 98-256

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 177

295 Mont. 260

983 P.2d 933

MISSOULA YWCA,

Plaintiff and Appellant,

vs.

ALLEN BARD,

Defendant and Respondent.

APPEAL FROM: District Court of the Third Judicial District,

In and for the County of Powell,

The Honorable Ted L. Mizner, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Jon E. Ellingson (argued), Missoula, Montana

For Respondent:

R. J. "Jim" Sewell, Jr., Bruce Spencer (argued), Smith Law Firm, Helena, Montana

For Amicus:

Klaus D. Sitte (argued), Missoula, Montana (Montana Legal Services Association); Judith Wang (argued), Missoula, Montana (Missoula Family Violence Council)

Heard: April 12, 1999

Submitted: April 20, 1999

Decided: July 27, 1999

Filed:

No

_____

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

¶1. This action was commenced in the District Court for the Third Judicial District, Powell County, to collect attorney fees incurred by the now deceased Julia Marquis from her surviving husband, Allen Bard. The complaint alleged that the attorney fees were incurred for necessities of life, as defined by § 40-2-210, MCA. But the District Court concluded that the action was barred by our prior decision in In re Marriage of White (1985), 218 Mont. 343, 708 P.2d 267. The court thus dismissed the action pursuant to Rule 12(b)(6), M.R.Civ.P., for failure to state a claim upon which relief can be granted. We reverse and remand.

¶2. The sole issue on appeal is whether attorney services are a "necessary article" under § 40-2-210, MCA, when they are provided to a wife to obtain orders of protection from an abusive spouse, thereby obligating the spouse to pay the attorney fees so incurred.

STANDARD OF REVIEW

¶3. The issue of whether the court properly granted a Rule 12(b)(6), M.R.Civ.P., motion to dismiss presents a question of law. Williams v. Zortman Mining, Inc. (1996), 275 Mont. 510, 512, 914 P.2d 971, 972 (citation omitted). This Court reviews issues of law to determine whether the district court's application or interpretation of the law is correct. Williams, 275 Mont. at 512, 914 P.2d at 972-73 (citation omitted). In reviewing a district court's dismissal for failure to state a claim upon which relief can be granted, we will construe the complaint in the light most favorable to the plaintiff, and all factual allegations are taken as true. Trankel v. State, Dept. of Military Affairs (1997), 282 Mont. 348, 351, 938 P.2d 614, 616 (citation omitted). This

Court will affirm the dismissal only if we find that the plaintiff is not entitled to relief under any set of facts which could be proven in support of the claim. <u>Trankel</u>, 282 Mont. at 350-51, 938 P.2d at 616 (citation omitted).

## FACTUAL AND PROCEDURAL BACKGROUND

¶4. For the reasons set forth above, we assume that all facts alleged by the plaintiff in support of its claim are true.

¶5. On October 31, 1996, Julia Marquis filed a petition for a temporary order of protection with the Powell County Justice of the Peace, in which she alleged that she was the victim of stalking by her husband, Allen Bard, and she believed that he would harm her. Her petition stated:

I have decided, because of our inability to make this marriage work, that I need time away from Allen. We discussed this and, because I insisted, agreed to live apart. But as the rest of this narrative will explain, he has done the opposite, following me, harassing me, and threatening me. I have told him that my feelings are dead, yet he shows up at the house the moment I arrive, calls me constantly, and comes to my work. Each encounter alternates between begging, anger, intimidation, and sometimes threats.

¶6. Julia described several terrifying incidents in which Allen, who is 6'4" and weighs 250 pounds, harassed and threatened her, including the following incident that occurred while she was waitressing at a restaurant in Ovando:

When he came back in the front door he came towards me, his face very angry, and then went for a patron, trying to choke him. I got in between, as did my co-worker, and we pushed him out the door. I stood out the door as he yelled and screamed obscenities at myself, my co-workers, and the patron. He called me a whore, threatened to blow the town apart, or kill me and anyone I might be with. Allen is big- 6'4" - 250 pounds.

¶7. The Justice Court granted the temporary order of protection. The following day Julia sought the legal services of Jon E. Ellingson to assist in extending the duration of the order of protection and in obtaining a dissolution of her marriage.

¶8. Julia filed her petition for dissolution in District Court on November 8, and one week later she petitioned the court to extend the temporary order of protection and

set a date for a hearing. The District Court found that Julia was in danger of harm from Allen and thus entered a temporary order of protection prohibiting him from threatening or committing acts of violence towards her; from harassing or annoying her; and from coming within 1500 feet of her, her residence, or her place of employment. At the subsequent hearing, Allen appeared through his attorney and stipulated to an extension of the restraining order during the pendency of the litigation.

¶9. Four days later, on December 6, 1996, Julia died from heart failure. At the time of her death, Julia had incurred liability for attorney fees in the amount of $2,623.50 together with advanced costs in the amount of $177.50. With her untimely death, the action for dissolution abated and was subsequently dismissed on March 3, 1997.

¶10. On November 3, 1997, her counsel filed suit in District Court alleging that the attorney fees were necessities of life that Allen was obligated to pay. Allen filed a motion to dismiss, claiming that he had no obligation to pay them, and the District Court agreed. It held that according to this Court's decision in White "there are no set of facts under which the Plaintiff would be entitled to relief. . . ."

¶11. Plaintiff appealed. Subsequently, all interest in the proceeds of the case was donated to the Missoula YWCA, which was substituted as the plaintiff and appellant pursuant to an order of this Court.

## DISCUSSION

¶12. Are attorney services a "necessary article" under § 40-2-210, MCA, when they are provided to a wife to obtain orders of protection from an abusive spouse, thereby obligating the spouse to pay the attorney fees so incurred?

¶13. In general, a person is not liable for the debts contracted by one's spouse. Section 40-2-106, MCA. But there is one exception. A person is liable for the debt contracted by the spouse where the debt is for "necessary articles" for the husband, wife or minor children. Sections 40-2-106, - 205, and -210, MCA. "Necessary articles" is broadly defined to include:

all such goods and services as are reasonably required to provide for the health, welfare, comfort, and education of the married person, his spouse, and minor children, taking into

consideration the earnings, resources, and general standard of living of such persons.

Section 40-2-210, MCA.

¶14. Allen's argument implies that "necessary articles" includes only food, clothing, shelter, transportation and medical care. But the definition itself is not so limited. Rather, the definition expansively includes "*all . . . services*" that are "reasonably required to provide for the *health, welfare [and] comfort*" of the spouse. Section 40-2-210, MCA (emphasis added). When interpreting this statutory definition, this Court has also considered the definition of "necessaries" contained in Black's Law Dictionary. That definition is similarly expansive and includes "[t]hings indispensable, or things proper and useful, for the sustenance of human life." White, 218 Mont. at 346, 708 P.2d at 269 (citing Black's Law Dictionary 1181 (Rev. 4th ed. 1968)).

¶15. We view freedom from spousal abuse to be within any reasonable definition of "things indispensable, or things proper and useful, for the sustenance of human life." Likewise, services provided to secure one's personal safety certainly protect the health and welfare of that person. It is difficult to imagine anything more fundamental to a person's health and welfare than to be free from intimidation, assault or even murder. And it would defy all logic to hold that although medical expenses incurred to treat a person after an assault are "necessary articles," services provided to prevent the assault are not. Similarly, what logical reason can there be for concluding that shelter is a necessity of life, but freedom from intrusion into that shelter by a stalker is not? We find none. Based upon the broad statutory definition, we conclude that legal services provided to obtain an order of protection may be a necessary article, rendering the spouse obligated to pay for such services.

¶16. Notwithstanding the expansive definition of "necessary articles" contained within the statute itself, Allen contends that this Court interpreted that definition more narrowly in 1985 when we rendered our decision in White. According to him, we held that attorney fees are never "necessities of life," and in so doing we overruled our earlier decision in McAlear v. Unemployment Compensation Commission (1965), 145 Mont. 458, 405 P.2d 219. We disagree with Allen's reading of White.

**¶17. Our limited case authority on this subject is consistent with our conclusion that Allen may be held responsible for Julia's attorney fees. We first addressed whether attorney fees may be necessities of life in <u>McAlear.</u> In that case, the attorney attempted to collect fees from the Unemployment Compensation Commission that were incurred by three people who had been wrongfully denied unemployment compensation. The attorney sought recovery of the fees from the Commission when he learned that the Commission had paid the individuals their benefits without withholding any amounts for attorney fees. <u>McAlear,</u> 145 Mont. at 461, 405 P.2d at 220-21. This Court rejected his claim, because the attorney had failed to notify the Commission that he represented his clients on a contingent fee basis, and he had failed to request notification from the Commission when the decision was made so that he could contact his clients and make arrangement for payment. <u>McAlear,</u> 145 Mont. at 464-65, 405 P.2d at 223.**

**¶18. But before reaching this decision, the Court stated that attorney fees could be considered "necessaries" within the meaning of R.C.M. 1947, 87-143, if there was, in fact, a necessity for such services. The Court explained:**

[W]e are faced with another question of whether or not legal fees are "necessaries." This court must conclude that in instances, such as this, where the services rendered restored three men to the rolls of the Unemployment Compensation Commission, set aside a one-year purge from those rolls of the Unemployment Compensation Commission, and cleared their names of fraud that in such instance attorney's fees most certainly should be considered as a debt incurred for "necessaries". . . . What are "necessaries" depends upon the facts of each case, and stated another way, whether legal services are to be considered "necessaries" depends upon whether there was a necessity for such services.

<u>McAlear</u>, 145 Mont. at 462-63, 405 P.2d at 222 (internal citations omitted).

**¶19. We had no occasion to address this issue again until two decades later when we decided <u>White.</u> In that case, Susan White reported to the welfare department that her husband Wilburn had sexually molested their foster child. During the course of the ensuing criminal trial, Wilburn incurred attorney fees in the amount of $10,000. The jury found him not guilty. <u>White,</u> 218 Mont. at 344, 708 P.2d at 268. Subsequently, during the course of Susan and Wilburn's dissolution proceedings, Wilburn contended that Susan was responsible for a share of his criminal attorney**

fees as a "necessary" within the meaning of § 40-2-106, MCA. We held that "[a]ttorney's fees incurred by one spouse to defend himself against child abuse charges are not necessaries within the meaning of § 40-2-106, MCA." White, 218 Mont. at 347, 708 P.2d at 269.

¶20. It is this holding upon which Allen heavily relies in arguing that attorney services provided to obtain orders of protection do not constitute necessaries of life. But in our view, the reach of White does not extend so far. The facts in White were unique and differ profoundly from the facts in this case. The language of our decision clearly limits White's holding to cases where the spouse has incurred attorney fees to defend against criminal child abuse charges. In contrast, at issue in this case is services provided to protect a spouse from violence. And as elaborated earlier, protection from intimidation, assault and murder falls squarely within the definition of "necessary articles."

¶21. Allen next argues that attorney fees are not necessities of life, because other remedies are available by which the plaintiff can recover the attorney fees from the spouse. Specifically, he notes that (1) § 40-4-110, MCA, authorizes an award in a dissolution action; (2) § 72-3-502, MCA, allows a creditor to be appointed personal representative of an estate; and (3) § 72-6-215, MCA, allows a creditor the right to seek compensation from joint tenancy property when other assets are unavailable. Allen also points to the general rule that where one statute deals with a subject in general terms and another deals with the same subject in a specific way, the special statute will prevail over the general one. He contends that § 40-4-110, MCA, is the more specific statute which allows a party to recover attorney fees, and that this Court should not fashion a new remedy.

¶22. We reject Allen's contentions for several reasons. First, there is no guarantee that any of these statutes would provide a remedy in every case as Allen suggests. With regard to § 40-4-110, MCA, the award of attorney fees under this section is discretionary with the court, and in making the award the court is directed to consider the financial resources of the parties. If the wife has sufficient resources, then the putative spouse might not be obligated to pay the fees. Moreover, in a case such as this where the dissolution action abated with the death of Julia, it is questionable whether the district court would retain authority to award any fees. Finally, that statute makes no provision for an award of fees where the victim reconciles with the estranged spouse and chooses not to request the fees. Unlike §§ 40-

2-106, -205, and -210, MCA, the statute provides no mechanism whereby an attorney can bring an action as a creditor in his or her own right against the putative spouse. With regard to § 72-3-502, MCA, and § 72-6-215, MCA, those statutes may or may not provide a remedy in this case, but in many cases where an estate has no assets or where there is no jointly held property, the remedies would be unavailing.

¶23. But more importantly, nothing suggests that simply because there may be other remedies, those remedies are exclusive. By concluding that attorney services in cases such as this may constitute necessities of life, this Court is not creating a new remedy not already provided by the legislature. Rather, we are simply applying the broad and express language of the statute which defines "necessary articles." And the legislature stated that "necessary articles" include "*all* . . . services as are reasonably required to provide for the health, welfare, [and] comfort" of the married person. Section 40-2-210, MCA (emphasis added).

¶24. Based upon all the foregoing we hold that attorney services may be a "necessary article" under § 40-2-210, MCA, when they are provided to a wife to obtain orders of protection from an abusive spouse, thereby obligating the spouse to pay the attorney fees so incurred. As we stated over three decades ago in McAlear, however, before a court may award attorney fees under this section, the court must examine whether such services are a necessity in each particular case. In this case, the District Court erroneously held that "there are no set of facts under which the Plaintiff would be entitled to relief. . . ." We reverse this holding. The District Court is directed to conduct further proceedings to determine whether in this particular case the legal services provided on behalf of Julia to obtain an order of protection were necessary.

¶25. Reversed and remanded for further proceedings consistent with this opinion.

/S/ WILLIAM E. HUNT, SR.


We Concur:


/S/ J. A. TURNAGE

No

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER