

DA 11-0626

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 170

MONTE GIESE, STEVEN KELLY,
and WILLIAM REICHELT,

   Petitioners and Appellants,

 v.

LEONARD BLIXRUD and BEN HOGE in their
capacities as Water Commissioner for the decree
in *Perry v. Beattie,* Cause No. 371, Mont. Ninth
Judicial District Court; and JOHN DOES 1 through 5,

   Respondents and Appellees.

APPEAL FROM:  District Court of the Ninth Judicial District,
       In and For the County of Teton, Cause No. DV 11-009
       Honorable Laurie McKinnon, Presiding Judge

COUNSEL OF RECORD:

   For Appellants:

      Stephen R. Brown (argued); Elena J. Zlatnik; Garlington, Lohn &
      Robinson, PLLP, Missoula, Montana (for Monte Giese, Steven Kelly and
      William Reichelt)

   For Appellees:

      John E. Bloomquist (argued); Abigail J. St. Lawrence; Rachel A. Kinkie;
      Doney, Crowley, Payne, Bloomquist, P.C., Helena, Montana (for Eldorado
      Cooperative Canal Company and Teton Cooperative Canal Company)

      Michael J.L. Cusick, Moore, O'Connell & Refling, P.C., Bozeman,
      Montana (for Patrick Saylor, Farmers Cooperative Canal Company, and
      Ottis and Sylvia Bryan)

David Weaver; Nash, Zimmer, Weaver & Grigsby, PLLC, Bozeman, Montana (for John E. Peebles and William S. Peebles)

_____

Argued and Submitted: May 16, 2012
Decided: August 10, 2012

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Monte Giese, Steven Kelly and William Reichelt appeal from the District Court's order dismissing their Second Amended Petition and their Third Amended Petition and Request for Certification to the Water Court and Injunctive Relief. We restate the issue on appeal as whether the District Court erred in dismissing Appellants' request for certification to the Chief Water Judge pursuant to § 85-2-406(2)(b), MCA. We reverse.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2 This is a dispute over rights to use water from the Teton River in Montana. The Teton River rises in the Rocky Mountain Front in west central Montana and flows eastward for almost two hundred miles before joining the Marias River and soon thereafter the Missouri River. Giese, Kelly and Reichelt use water from the lower or downstream portion of the Teton near Fort Benton, Montana. They claim generally that they are damaged by diversion practices on the upstream portion of the Teton near Choteau, Montana, and that their "calls" on upstream appropriators to release water for their downstream use have been ignored. They first filed a petition for a writ of prohibition in the District Court in February, 2011, and ultimately filed second and third amended petitions seeking to halt certain water diversions from the Teton.

¶3 The dispute arises at least in part from the decision in *Perry v. Beattie*, Cause No. 371, Montana Eleventh Judicial District Court, Teton County, March 28, 1908.[1] *Perry* decreed the priority date and flow rate of about 40 water right claims in the upper Teton

---

[1] Teton County is now part of the Ninth Judicial District.

3

River west of Choteau. The District Court appointed a Water Commissioner pursuant to § 85-5-101, MCA, to administer the water rights decreed in *Perry*. The majority of water users on the Teton (and their successors in interest, including downstream users Giese, Kelly and Reichelt) were not parties to the *Perry* case. Giese, Kelly and Reichelt claim water rights from the Teton with priority dates that are senior to or contemporary with the upstream rights decreed in *Perry*. Water right claimants on the Teton are participating in the Water Court's on-going adjudication of water rights under Title 85, Chapter 2 of the Montana Code. While that process is nearing its final stages, it is not yet complete and the Water Court has not issued a final decree.

¶4     At some time after 1908[2], the Water Commissioner appointed by the District Court to administer the *Perry* decree began diverting most or all of the flow of the Teton River out of its natural channel and into the Bateman Ditch. That ditch runs roughly parallel to the natural channel of the river and bypasses a stretch of the river channel several miles long that is sometimes referred to as the Springhill Reach. The Reach is an area of natural gravel riverbed near Choteau, and a significant amount of the water flowing through it will seep into the ground. Diverting the Teton River's flow through the Bateman Ditch eliminates the seepage of water in the Reach. While up to 1500 miner's inches[3] of the water turned into the Bateman Ditch is used for a decreed right currently held by Saylor, no other appropriator uses the Ditch as a point of diversion.

---

[2] The commencement date of this practice is in dispute, and may have been as late as the 1970s.

[3] A miner's inch is a method of measuring the flow of water, and 100 inches is equivalent to 2.5 cubic feet of water per second. Section 85-2-103, MCA.

Diversion of water into the Bateman Ditch in excess of the Saylor right has been a practice of the water commissioner, but one not expressly authorized by any prior decree of the District Court. *See Fellows v. The Office of the Water Comm'r*, 2012 MT 169, ___ Mont. ___, ___P.3d ___.

¶5 The decreed Choteau Cattle Company right is one of the most senior rights on the Teton, and its point of diversion is the Burd Ditch, the headgate for which is located just downstream from where the Bateman Ditch water re-enters the river channel. Diversion of water through the Bateman ditch in excess of that needed for the Saylor right has been justified as necessary to provide water to Choteau Cattle Company. However, Choteau Cattle has specifically disclaimed any intent to use the Bateman Ditch as a point of diversion and has taken the position that its senior right should be transported to its point of diversion through the natural channel of the Teton River. A direct consequence of the Bateman diversion is to make water available to upper Teton River water users that would not be available for their use if they were required to allow enough water to flow through the Reach for the use of senior appropriators downstream such as Choteau Cattle.

¶6 Giese, Kelly and Reichelt challenge the Water Commissioner's practice of diverting the flow of the Teton down the Bateman Ditch. They contend that their water rights pre-date the rights of many upstream *Perry* decree rights and pre-date the Water Commissioner's diversion of the Teton through the Bateman Ditch. They contend that since the Bateman Ditch was not used to divert the entire river at the time of the *Perry* decree, the Water Commissioner lacked the authority to make the diversion. They

contend that they are entitled to have the river flow in the natural channel in the condition it was in at the time their appropriations were perfected and that the natural channel flow cannot be altered if it adversely affects their rights. They contend that allowing the natural water seepage through the Springhill Reach is a key element in the hydrology of the Teton River; that it is essential to stable groundwater and springs; and that it is essential to their access to the Teton River water and to the exercise of their water rights.

¶7 Giese, Kelly and Reichelt acknowledge that it is proper to divert Teton water into the Bateman Ditch as needed to fulfill the Saylor right, which was decreed in *Perry* and which has historically been diverted from the river through the Bateman Ditch. But they contend that diversion of any water in addition to that needed for the Saylor right is not a beneficial use of water and is unlawful. They prayed for an injunction to prohibit the Water Commissioner from diverting the excess water through the Bateman Ditch.

¶8 The District Court dismissed the Second Petition in part because Giese, Kelly and Reichelt had other remedies through the on-going adjudication process in the Water Court, or through a petition seeking relief under § 85-2-406(2)(b), MCA. That statute allows a water user to petition the district court to certify a dispute to the Chief Water Judge (commonly called the Water Court) for a determination of rights when the dispute involves water rights not all of which have been conclusively determined in prior court decrees. The District Court invited Giese, Kelly and Reichelt to re-file their petition and request certification to the Water Court under § 85-2-406(2)(b), MCA. They accepted

6

the District Court's invitation and filed a Third Amended Petition seeking certification to the Water Court and injunctive relief.[4]

¶9 The District Court dismissed the Third Amended Petition for failure to state a claim, on the ground that the petitioners had "not set forth any averments regarding their water right claims on the lower Teton River," and the existence and priority of water claims are the only matters that can be certified to the Water Court under § 85-2-406, MCA. The District Court determined that injunctive relief was not available because petitioners had not plead a certifiable claim, and that the Court's "authority, and obligation, is to the decreed water users under *Perry*." Giese, Kelly and Reichelt appeal.

**STANDARD OF REVIEW**

¶10 A district court's decision dismissing a complaint for failure to state a claim under M. R. Civ. P. 12(b)(6) is reviewed as an issue of law to determine whether it is correct. This Court will construe the complaint in a light most favorable to the plaintiff, deeming all factual allegations to be true. This Court will affirm the dismissal only if it finds that the plaintiff is not entitled to relief under any set of facts that could be proven in support of the claims. *Missoula YWCA v. Bard*, 1999 MT 177, ¶ 3, 295 Mont. 260, 983 P.2d 933; *Hauschulz v. Michael Law Firm*, 2001 MT 160, ¶¶ 7-8, 306 Mont. 102, 30 P.3d 357; *Meagher v. Butte-Silver Bow County*, 2007 MT 129, ¶ 13, 337 Mont. 339, 160 P.3d 552.

---

[4] The Chief Water Judge has the responsibility to administer the adjudication of existing water rights. Section 3-7-223(1), MCA. The Chief and the Associate Water Judge have jurisdiction over "all matters relating to the determination of existing water rights" in Montana. Section 3-7-224(2), MCA.

7

¶11     The dispositive issue on appeal is whether the District Court correctly dismissed appellants' request for certification to the Chief Water Judge pursuant to § 85-2-406(2)(b), MCA. That statute provides, in part:

> When a water distribution controversy arises upon a source of water in which not all the existing rights have been conclusively determined . . . , any party to the controversy may petition the district court to certify the matter to the chief water judge. If a certification request is made, the district court shall certify to the chief water judge the determination of the existing rights that are involved in the controversy . . . . The district court from which relief is sought shall retain exclusive jurisdiction to grant injunctive or other relief that is necessary and appropriate pending adjudication of the existing rights certified to the water judge. Certified controversies must be given priority over all other adjudication matters. After determination of the matters certified, the water judge shall return the decision to the district court with a tabulation or list of the existing rights and their relative priorities.

This statute clearly applies to the Giese, Kelly and Reichelt Third Amended Petition filed in District Court. The petitioners alleged in their pleadings throughout this case the existence of a Teton River water distribution controversy as required by § 85-2-406(2)(b), MCA. They alleged that their "calls" on upstream junior water users have been ignored and they alleged that they disagreed with the water commissioner's diversion of the Teton through the Bateman Ditch. In addition, several upper Teton River water users who benefit from the diversion through the Bateman Ditch have appeared to assert their interests, including their interests in continuing the Bateman diversion, underscoring the existence of a water distribution controversy.

¶12 It is also clear that the petitioners alleged that they hold valid water rights on the Teton River. The opening paragraphs of their petition specifically describe their water right claims in the Teton River and it was error for the District Court to conclude otherwise. Petitioners alleged, and there is no disagreement, that not all existing rights in the Teton have been conclusively determined.

¶13 By making these specific factual allegations in the petition, Giese, Kelly and Reichelt qualified to have their dispute certified to the Chief Water Judge under § 85-2-406(2)(b), MCA. That statute provides that upon request "the district court *shall certify* to the chief water judge the determination of the existing rights that are involved in the controversy." (Emphasis added.) They were not required to do any more to qualify for certification to the Chief Water Judge as provided in § 85-2-406(2)(b), MCA.

¶14 It is well established that in considering a motion to dismiss the district court must construe the complaint in a light most favorable to the plaintiff and must deem all factual allegations of the complaint to be true. Dismissal for failure to state a claim is proper only if the district court finds that the plaintiff, accepting the truth of the allegations of the complaint, is not entitled to relief under any set of facts that could be proven in support of the claims. *Missoula YWCA,* ¶ 3; *Hauschulz,* ¶¶ 7-8; *Meagher*, ¶ 13.

¶15 The petitioners here alleged in their Petition the existence of a controversy concerning the manner in which the water commissioner distributes water on the Teton River, namely, the practice of diverting water through the Bateman Ditch. The petitioners alleged and it is a fact that not all existing rights on the Teton River have been

9

conclusively determined. The petitioners alleged that their water rights in the Teton River have been adversely affected by upstream junior appropriators who benefit from the Bateman Ditch diversion and that neither the upstream users nor the commissioner will alter the practice. The allegations of the petition were therefore sufficient to state a case for referral of the matter to the Chief Water Judge under § 85-2-406(2)(b), MCA. It was error for the District Court to conclude otherwise.

¶16    Without expressing any view as to the merits of the underlying dispute, it is clear that Giese, Kelly and Reichelt have been left without any forum in which to pursue a remedy. The District Court held that its "authority and obligation is to the decreed water users under *Perry*," which would continue until petitioners demonstrated "a conclusively established water right and priority requiring administration beyond the parameters of the *Perry* decree." Yet the District Court rejected the petitions, including the petition seeking certification of the issue to the Chief Water Judge under § 85-2-406(2)(b), MCA, where the petitioners could establish that they had a water right that required administration beyond the parameters of the *Perry* decree. Not being allowed to present their claims to the Chief Water Judge under § 85-2-406(2)(b), MCA, the petitioners were without any avenue to advance their claims, except to wait until some unknown time in the future when all water rights in the Teton River are conclusively established. Section 85-2-406(2)(b), MCA, should not be narrowly interpreted so as to frustrate solutions to water distribution controversies, but rather should be applied so as to allow for the expeditious resolution of these controversies.

10

¶17 Further, § 85-2-406(2)(b), MCA, provides that the district court in which certification is sought "shall retain exclusive jurisdiction to grant injunctive or other relief that is necessary and appropriate" after certification to the Chief Water Judge. Giese, Kelly and Reichelt have requested injunctive relief, and the District Court had jurisdiction to consider that request.

¶18 Therefore, we reverse and remand to the District Court with instructions to certify all appropriate issues to the Chief Water Judge as provided in § 85-2-406(2)(b), MCA, and to grant such injunctive or other relief that, in the District Court's discretion, it determines to be necessary and appropriate.

¶19 Reversed.

/S/ MIKE McGRATH

We Concur:

/S/ JIM RICE
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS