DA 15-0034

FILED

April 26 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0034

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 94

ELDORADO COOP CANAL COMPANY,

Claimant and Appellant,

LOWER TETON JOINT OBJECTORS;

Objectors and Cross-Appellants,

FARMERS COOPERATIVE CANAL CO.;
ELDORADO COOP CANAL COMPANY,

Objectors,

TETON COOP RESERVOIR CO.;

NOIA and Appellee/Cross-Appellant,

PATRICK SAYLOR,

Intervenor and Appellee.

APPEAL FROM:    Montana Water Court, Cause No. 41O-129B,
                Honorable Russ McElyea, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        John E. Bloomquist, Bloomquist Law Firm, PC, Helena, Montana

        For Appellee Teton Coop Reservoir Co.:

        Holly Jo Franz, Ada C. Montague, Franz & Driscoll, PLLP,
        Helena, Montana

For Appellees Lower Teton Joint Objectors:

Stephen R. Brown, Garlington, Lohn & Robinson, PLLP,
Missoula, Montana

Submitted on Briefs:  November 12, 2015

Decided:  April 26, 2016

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 Eldorado Coop Canal Company (Eldorado), a group known as the Lower Teton Joint Objectors (LTJO), and Teton Coop Reservoir Co. (TCRC) all appeal from the Montana Water Court's Order Amending and Adopting Master's Report in Water Court Case 41O-129B. We affirm.

## ISSUES

¶2 We restate and review the parties' following issues:

*1. Did the Water Court correctly conclude that the cumulative volume of water Eldorado may divert from the Teton River for the Eldorado, Truchot, Dennis, and Beattie Rights is limited to no more than 15,000 acre-feet per year?*

*2. Did the Water Court err when it chose not to assign separate volume limits for each of Eldorado's four sets of combined irrigation and stockwater rights for the Eldorado, Truchot, Dennis, and Beattie Rights?*

*3. Did the Water Court err when it limited the flow rate of the Truchot Right to 300 miner's inches instead of 225 miner's inches?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 The present case is the second segment of Water Court Case 41O-129. The previously litigated portion stemmed from Eldorado's claimed use of the Bateman Ditch, which also involved a question certified by the District Court to the Water Court pursuant to § 85-2-406(2)(b), MCA.[1] Following our decision in *Giese* the Water Court bifurcated the case into 41O-129A and 41O-129B. Case 41O-129A was limited to the issues

---

[1] It is unnecessary to recount the somewhat complex procedural aspects of *Giese v. Blixrud*, 2012 MT 170, 365 Mont. 548, 285 P.3d 458 and the underlying Water Court Case 41O-129. It suffices to state that Case 41O-129A related solely to the Bateman Ditch, and LTJO utilized avenues available to it through both the District Court and the Water Court to determine the extent of the rights involved.

involving the use of the Bateman Ditch. We reviewed those issues in *Eldorado Co-Op Canal Co. v. Lower Teton Joint Objectors*, 2014 MT 272, 376 Mont. 420, 337 P.3d 74. Presently, we review the parties' appeals of the Water Court's determination of the remaining aspects of the case, styled as Case 41O-129B.

¶4     The Teton River's headwaters are northwest of the town of Choteau, located in west-central Montana along the Rocky Mountain Front. After leaving the mountains, the river travels east, making southeast and northeast turns, before joining the Marias River around one hundred and fifty miles later. The Teton River does not have an onstream reservoir capable of stabilizing late season flows. The sources of early season high flows and late season low flows are spring runoff and the continued melting snowpack. It is common for stretches of the river to be completely dry by late summer. The Teton River is located in the Teton River Basin, 41O, which has not yet received final adjudication and is currently controlled by a Temporary Preliminary Decree.

¶5     Eldorado is one of four companies that divert water from the Teton River. It is historically considered to be the most senior of the four companies. Eldorado claims water rights based upon the rights decreed in *Perry v. Beattie*, Cause No. 371, Montana Eleventh Judicial District Court, Teton County, March 28, 1908.[2] Under the *Perry* decree the District Court established the priority dates and flow rates for approximately 40 water rights. Of these decreed water rights Eldorado owns four. They are referred to as the Eldorado, Truchot, Dennis, and Beattie Rights, which are based on their ownership at the time of the decree. Initially, Eldorado owned the Eldorado Right, and over time it

---

[2] Teton County is now part of the Ninth Judicial District.

4

acquired these other three named rights. Under the purview of the District Court, a Water Commissioner has historically delivered water to the applicable water users in line with their rights as established in the *Perry* decree.

¶6 As required by the Montana Water Use Act (WUA), codified at Title 85, MCA, Eldorado filed a Statement of Claim for its four decreed rights—for its irrigation rights and for its stockwater rights—on an Irrigation District Claim Form. During the examination of Basin 41O the Montana Department of Natural Resources and Conservation (DNRC) assigned individual claims to each of Eldorado's four *Perry* rights. Eldorado was assigned a total of eight claims: four irrigation claims and four stockwater claims. Thus, each of the four named rights (Eldorado, Truchot, Dennis, and Beattie) contains an irrigation and a stockwater component.

¶7 Objectors LTJO and TCRC, along with others, filed objections to Eldorado's claims. Some of the objectors were able to come to an agreement with Eldorado during the settlement process. LTJO and TCRC were not. In June 2012, the parties participated in a four-day trial in front of a Water Master. In August 2013, the Water Master issued a Master's report related to Eldorado's water claims based on the four named rights. All parties filed objections to the Master's report. In November 2014, the Water Court responded to the parties' objections and issued an order amending and adopting the Master's report. Issues One and Two of this appeal pertain to volume, the facts of which are discussed in this section. Issue Three pertains to flow rate, the facts of which are discussed exclusively in the discussion of Issue Three.

5

**A. Master's report**

¶8 The Water Master issued a report with his findings of fact and conclusions of law regarding each of Eldorado's claimed water rights. Pertinent to the issues on appeal, the Master determined the four named rights should be limited to the following total volume quantifications: 1) Eldorado Right limited to 9,000 acre-feet per year; 2) Truchot Right limited to 450 acre-feet per year; 3) Dennis Right limited to 300 acre-feet per year; and 4) Beattie Right limited to 600 acre-feet per year—totaling 10,350 acre-feet per year. The Master based these findings in part on witness testimony in an effort to determine the historic volume used for each right.

¶9 The Master stated in the report that Eldorado's volume has continued to increase, most notably after 1980, due to Eldorado's expansion of its irrigated acres and period of use. The Master stated the historic volume should be determined as of the date of a right's perfection, which he determined to be 1908 for the Eldorado Right based on the completion of Eldorado's original intent to develop a ditch system. The Master outlined three possible methods to determine the volume: 1) based on actual diversion at the time of perfection; 2) based on the acres historically irrigated at the time of perfection plus a volume-per-acre standard; and 3) based on the decreed flow rate, the number of acres the flow rate could reasonably irrigate, and a volume-per-acre standard.

¶10 The Master found problems with the evidence related to the first two methods. Specifically, the Master stated there was insufficient evidence to determine volume based on actual diversion, and the evidence related to the acreage historically irrigated at the

6

time of perfection was not credible. Instead, he found the third method, based on the decreed flow rate, was the better method of determining volume for the right.

¶11 For the third method of making a volume determination the decreed flow rate is the only precisely known fact. To determine the remaining two elements, number of acres the flow rate could reasonably irrigate, or duty of water, and the volume-per-acre standard, the Master analyzed the testimonial and documentary evidence to reach those determinations. The Master found the duty of water to be 0.5 miner's inch per acre based on the proposed findings of fact Eldorado submitted during the *Perry* litigation. With a 0.5 inch-per-acre standard and Eldorado's decreed flow rate of 3,000 miner's inches, the Master concluded 6,000 acres should be used to determine the volume for the Eldorado Right.

¶12 The final aspect, the volume-per-acre standard, the Master evaluated: the volume as claimed by Eldorado on its Statement of Claim; testimony from District Court Judge R.D. McPhillips, who marshaled the decreed right; the Water Commissioner's records; testimony from Eldorado's expert witness John Westenberg; and testimony from LTJO's expert witness Jay Johnson.[3] Judge McPhillips testified to using a one acre-foot-per-acre-per-year standard when marshaling Eldorado's rights, but admitted he did not know if it was or was not the appropriate standard to use. He stated that figure was given to him by an employee of either the county's Agricultural Stabilization

---

[3] Interestingly, Johnson is a former DNRC water resource specialist who reviewed and analyzed Eldorado's four rights during his tenure with the DNRC. Johnson later left the DNRC to consult privately, and through his consultant work re-analyzed Eldorado's claims and opined on behalf of LTJO.

Conservation Service[4] or the county's DNRC Soil and Water Conservation District office.

¶13    Ultimately, the Master found the most credible evidence was a standard offered by LTJO's expert witness. Johnson testified that for three of Eldorado's rights (Truchot, Dennis, and Beattie) a 1.5 acre-feet-per-acre-per-year standard should apply.[5] He was unable to identify the source of the standard except to state it was a figure from the DNRC. The Master found "while [Johnson] did not reference the source for the standard in DNRC documents, his expertise places him in the position to know the standards the DNRC is using. His expertise also gives him the ability to determine if that standard is reasonable. . . . Johnson's testimony and the exhibits used . . . [are] the most compelling evidence of an appropriate [standard]."

¶14    The Master applied Johnson's standard to the Eldorado Right at 6,000 irrigable acres. The Master used the same standard given by Johnson for the three remaining rights, and applied it to the acreage of each right's historic place of use, which he determined based on Johnson's analysis of the original property owners' legal descriptions.

**B. Water Court's order**

¶15    The Water Court determined the Master erred with his volume quantifications of the four named rights. The court determined the Master committed legal error by not first

---

[4] In his testimony Judge McPhillips used the former name for a state office of the United States Department of Agriculture Farm Service Agency.

[5] Johnson's testimony was limited to three of the four named rights. He did not testify regarding the Eldorado Right.

8

determining whether the objectors met their burden of proof to refute Eldorado's claims. The court then found the Master's volume determinations were not based on substantial evidence because the Master utilized an incorrect water volume standard that was used by a witness. The court held it was also legal error to use the incorrect water volume standard to determine Eldorado's rights' volume quantifications. The court "decline[d] to adopt the Master's findings regarding volume for [Eldorado's claims]" and stated the volume for the claims "should be decreed as claimed in [Eldorado's] statement of claim, with a remark that states 'the combined annual volume for [the] claims . . . may not exceed 15,000 acre feet'" per year. The 15,000 acre-feet-per-year figure was the combined amount claimed on Eldorado's initial Statement of Claim for all four named rights. Appellant argues the Water Court correctly reversed the Master's volume determination, but erred by setting the volume quantification at 15,000 acre-feet per year. LTJO cross-appeals the issue but argues the Master's findings are not clearly erroneous, are supported by substantial evidence, and thus the Water Court should be reversed and the Master's volume findings reinstated.

## STANDARDS OF REVIEW

¶16   A water case that involves both a Water Master and the Water Court implicates a double layer of review. *Heavirland v. State*, 2013 MT 313, ¶ 13, 372 Mont. 300, 311 P.3d 813. Initially, the Water Court is required to review the factual findings made by a Water Master under the clearly erroneous standard. Conclusions of law made by a Water Master are reviewed by the Water Court for legal correctness. *Heavirland*, ¶¶ 13-14. This Court reviews the Water Court's order to determine whether it correctly applied

9

those standards. Whether the appropriate standards were applied is a question of law, which we review de novo. *Heavirland*, ¶ 15.

¶17 If we determine the Water Court properly rejected a factual finding made by a Water Master, we review the substitute and any additional findings for clear error. *Skelton Ranch, Inc. v. Pondera Cnty. Canal & Reservoir Co.*, 2014 MT 167, ¶ 26, 375 Mont. 327, 328 P.3d 644 (citations omitted). Clear error can be found by one of three ways. A factual finding may be clearly erroneous if it is not supported by substantial evidence. Even if supported by substantial evidence, the finding may be clearly erroneous if the trier of fact misapprehended the effect of the evidence. Even if supported by substantial evidence and the effect of the evidence is not misapprehended, a finding may be clearly erroneous if, in light of the evidence as a whole, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Marks v. 71 Ranch, LP*, 2014 MT 250, ¶ 12, 376 Mont. 340, 334 P.3d 373.

¶18 Substantial evidence is evidence that a "reasonable mind might accept as adequate to support a conclusion, even if the evidence is weak or conflicting." *Skelton Ranch, Inc.*, ¶ 27 (citations omitted). To find substantial evidence there must be more than a scintilla of evidence but a preponderance of the evidence is not required. This standard is deferential, and not synonymous with the clear error standard. A reviewing court may still find a factual finding is clearly erroneous even though there is evidence to support it. *Skelton Ranch, Inc.*, ¶ 27.

**DISCUSSION**

¶19     *1. Did the Water Court correctly conclude that the cumulative volume of water Eldorado may divert from the Teton River for the Eldorado, Truchot, Dennis, and Beattie Rights is limited to no more than 15,000 acre-feet per year?*

¶20     Under the WUA, enacted in 1973 for the purpose of adjudicating and determining the extent of water rights in the state, the Water Court is bound to enter a description of a water right with the attributes listed in § 85-2-234, MCA, into the final decree for a given basin. Sections 85-2-101, -234, MCA. Of the attributes listed in § 85-2-234, MCA, the amount of water included in the right is required, and volume is permitted, but not required, for certain rights. Section 85-2-234(6)(b), MCA. Under the WUA, a water right may receive a volume determination in the adjudication process if "a water judge determines [the right] require[s] both volume and flow rate to adequately administer the right." Section 85-2-234(6)(b)(iii), MCA.

¶21     In *Worden v. Alexander*, 108 Mont. 208, 90 P.2d 160 (1939) we recognized "what quantum of water is reasonably required for irrigation is necessarily. . . complicated . . . depending, as it does, upon many different conditions." *Worden*, 108 Mont. at 213, 90 P.2d at 162 (quoting *Joerger v. Pacific Gas & Elec. Co.*, 276 P. 1017, 1030 (Cal. 1929)). Such conditions include: the soil composition; the climactic conditions; the irrigated acreage; the location, quality, and altitude of the land; the types of crops irrigated; the length of the irrigation season; and any other condition specific to the unique case. *Worden*, 108 Mont. at 213, 90 P.2d at 162. These conditions must be considered and weighed by the trier of fact to reach an ultimate conclusion. *Worden*, 108 Mont. at 213, 90 P.2d at 162. Ultimately, "[t]he question of the amount of water necessary per acre for

11

irrigation is one of fact for the court or jury, and can never be considered a question of law for the courts." *Worden*, 108 Mont. at 213, 90 P.2d at 162 (quoting *Tucker v. Missoula Light & Water Co.*, 77 Mont. 91, 108, 250 P. 11, 18 (1926)).

¶22 The intent of the WUA is to determine water rights in the state as they existed on July 1, 1973, the date the WUA went into effect. The process of determining the extent of all water rights is multistep. Initially, any party claiming an existing water right was required to file a Statement of Claim to assert the right. Section 85-2-224, MCA. After that, other affected parties may file objections to challenge the extent of the claimed right. Section 85-2-233, MCA. The final decree settles disputes with finality. Section 85-2-234, MCA. However, prior to the entry of the final decree we have acknowledged the Water Court's ability to test the provisions of a temporary decree to determine whether they properly and fairly reflect an appropriator's rights. *McDonald v. State*, 220 Mont. 519, 531-32, 722 P.3d 598, 606 (1986). Modifications may be necessary and can be made before the entry of the final decree. *McDonald*, 220 Mont. at 532, 722 P.3d at 606.

¶23 Eldorado argues the Water Court impermissibly constrained its water rights by quantifying the volume of the four rights as it did. In essence, Eldorado contends 15,000 acre-feet per year adopted by the Water Court is too low a limit. Eldorado argues *McDonald* established the principle that volume is a reflection of beneficial use of pre-WUA water rights. *McDonald*, 220 Mont. at 530, 722 P.2d at 605. Eldorado further argues the volume determination subjects the rights to "a limit [that] has never been a part of the use of water by Eldorado[.]" LTJO argues the Water Court should have

12

accepted the Master's determination of 10,350 acre-feet per year, in total for all four rights because the Master's findings were supported by substantial evidence.

¶24 *McDonald* addressed the issue of whether volume determinations are constitutionally permissible. Similar to the instant case, the petitioner's water right in *McDonald* had never previously been subjected to a volume limitation. *McDonald*, 220 Mont. at 523, 722 P.2d at 600-01. However, we held they are permissible as long as they do not improperly constrain the historical beneficial use of pre-July 1, 1973 water rights. *McDonald*, 220 Mont. at 521, 532, 722 P.2d at 599, 606. "[T]he amount actually needed for beneficial use within the appropriation will be the basis, the measure and the limit of all water rights in Montana as between appropriators, and as between appropriators and others." *McDonald*, 220 Mont. at 532, 722 P.2d at 606.

¶25 In this case the Master determined a volume determination is necessary to administer these water rights. The Water Court affirmed the Master's decision. This decision is governed by statute. When we interpret a statute we first look to the plain meaning of its words. *Clarke v. Massey*, 271 Mont. 412, 416, 897 P.2d 1085, 1088 (1995). When a statute is clear and unambiguous, it is the role of the judiciary to "ascertain and declare what is in [the] terms [of the statute] or in [the] substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA; *see also Clark*, 271 Mont. at 416, 897 P.2d at 1088. A plain reading of the governing statute, § 85-2-234(6)(b)(iii), MCA, states a water judge has the discretion to determine whether volume is necessary. Therefore, we will not disturb the

Water Court's determination that a volume quantification is necessary to administer the rights at issue in this case.

¶26 Now, because we hold volume is a factual finding, of which the determination of its necessity is left to the discretion of the Water Court, we review the Water Court's application of the appropriate standard of review to the volume determination made by the Master de novo. The Water Court stated it was "legal error [for the Master] to change the elements of Eldorado's water rights without first determining that the objector's burden of proof had been met," but then further analyzed the Master's findings and determined they were not supported by substantial evidence. Despite the fact that the Master did not outright state the objectors met the burden of proof under § 85-2-227(1), MCA, we may draw an inference that the Master decided the burden was met based on his deviation in volume from Eldorado's Statement of Claim.

¶27 A reviewing court—in this case both this Court and the Water Court—cannot simply substitute its own judgment for the Master who is the trier of fact. Further, reviewing courts must give due regard to the Master's ability to judge the credibility of witnesses. *Skelton Ranch, Inc.*, ¶ 63. However, this does not mean the clearly erroneous standard does not apply to the Master's findings. Here, the Master specifically outlined the ways in which he found Johnson's testimony to be the most credible, which neither we nor the Water Court may dispute. Instead, the Water Court reviewed the evidence presented and found the 1.5 acre-feet-per-acre-per-year standard adopted by the Master was not supported by substantial evidence. The Water Court's rationale was that the standard Johnson used was not in line with the DNRC's standards for the climactic area,

14

and it did not represent the amount of water taken at the point of diversion, which is required by law.[6] We do not agree with the Water Court's determination that the 1.5 acre-feet-per-year standard is not supported by substantial evidence. A reasonable mind might accept Johnson's testimony as adequate to support the conclusion that a 1.5 acre-feet-per-year standard should be applied to the Truchot, Dennis, and Beattie Rights, even though the testimonial evidence may be weak and evidence that conflicts with Johnson's testimony exists. However, upon our review of the evidence in the record we do agree with the Water Court's finding of clear error regarding the Master's volume determination that a 1.5 acre-feet-per-year standard should apply. We apply the right-result, wrong-reason appellate rule, and hold the Water Court reached the right result, but for the wrong reason. *Tipp v. Skjelset*, 1998 MT 263, ¶ 16, 291 Mont. 288, 967 P.2d 787 (citations omitted).

¶28 We note in *Heavirland* we clarified the standards of review for both the Water Court's review of a Water Master's report and this Court's review of a Water Court order. We now take this opportunity to reinforce these standards. When the Water Court assigns a case to a Water Master pursuant to W. R. Adj. R. 11 the Water Master becomes the trier of fact. M. R. Civ. P. 53(e)(2). The Water Court then becomes the reviewing court and is "tethered to the clear and unequivocal articulation of the applicable standard of review in Rule 53." *In re Parenting of G.J.A.*, 2014 MT 215, ¶ 19, 376 Mont. 212,

---

[6] Upon review of Johnson's testimony, he did not state it was a point of diversion standard; instead he stated he did not recall if the standard applies at the field or at the point of diversion. He did state he was aware that the DNRC's diverted volume standards for the applicable climactic area are higher than 1.5 acre-feet per year.

15

331 P.3d 835. The Water Court is not free to simply substitute its judgment for the Master when reviewing his factual findings. *Weinheimer Ranch, Inc. v. Pospisil*, 2013 MT 87, ¶ 19, 369 Mont. 419, 299 P.3d 327. We emphasize that a difference of opinion regarding evidence presented to the trier of fact does not equal clear error. *Interstate Prod. Credit Ass'n v. Desaye*, 250 Mont. 320, 324, 820 P.2d 1285, 1287-88 (1991). The Water Court is obligated to review and analyze the Master's legal and factual findings under the applicable standards of review, and it is paramount that the Water Court follows its obligations.

¶29     Applying the appropriate standard of review to these facts, we find although there is substantial evidence to support the Master's conclusion, he nonetheless clearly erred in applying Johnson's proffered volume standard to all four rights. The evidence presented as to the appropriate volume standard included: Eldorado's Statement of Claim;[7] Judge McPhillips' testimony; the DNRC standards for volume; the Water Commissioner's records; and testimony by two expert witnesses, Johnson and Westenberg. All of the evidence somewhat conflicted, and none of the evidence presented provided a clear path to determine a volume quantification that should be used to reflect historic usage pursuant to *McDonald*.

---

[7] Under statute all aspects of Eldorado's Statement of Claim, which included a claimed volume, should be afforded prima facie proof of the contents of the claim. Section 85-2-227(1), MCA. Therefore, none of the parties needed to prove the 15,000 acre-feet per year claimed by Eldorado for all four rights was correct, but that it was incorrect, as shown by a preponderance of the evidence. Further, Eldorado itself was not bound to the volume amount it claimed on its Statement of Claim. Along with those who objected to the extent of Eldorado's claim, Eldorado had the opportunity to present evidence to refute its own volume claim and show, by a preponderance of the evidence, that a greater volume was historically used. *Nelson v. Brooks*, 2014 MT 120, ¶ 34, 375 Mont. 86, 329 P.3d 558.

¶30 Eldorado's Statement of Claim lists 15,000 acre-feet per year for the irrigation of 15,240 acres, which amounts to just less than one acre-foot per year. Through the DNRC's claims review process Eldorado's claim abstract was amended to reflect that the actual irrigated acreage may be different than claimed, and the remark that "the total volume of [the] water right shall not exceed the amount put to historical and beneficial use" was added, which in essence describes that a volume was not previously decreed for a right. Eldorado argues W. R. Adj. R. 19 requires that all of the elements of a Statement of Claim must be proven by a preponderance of the evidence. Eldorado misstates the rule. The rule states prima facie proof of the contents of a claim "may be contradicted and overcome by other evidence that proves, by a preponderance of the evidence, that the elements of the claim do not accurately reflect the beneficial use of the water right as it existed prior to July 1, 1973." W. R. Adj. R. 19. By statute, the Water Court is obligated to accept the claim form as proof of the contents of a claim, to be overcome only by a preponderance of the evidence. Section 85-2-227(1), MCA. In essence, a water right as it is reflected on a claim form is entitled to be taken as true on its face, unless proven otherwise. To require the Water Court to find proof of the elements of claims made by a preponderance of the evidence is contrary to the rule, and we reject Eldorado's argument in this regard.

¶31 Judge McPhillips testified he historically marshaled one acre-foot per year for the decreed rights, but he could not state whether it was the proper amount.[8] The DNRC standards were used for the limited purpose of analyzing Johnson's proffered standard because he claimed the standard was an applicable standard used by the DNRC. The Water Commissioner's records were determined not to be a credible source of historic volume diversion because the records were incomplete, and prior to 1964 there was a lack of a dependable measuring device on the ditch that would have produced reliable metrics. Westenberg testified to the generalities of whether the Water Commissioner's records reflect a volume usage for Eldorado's rights that are within the DNRC standards for the climactic area and type of irrigation for these rights. He did not opine as to what volume should apply to Eldorado's rights.

¶32 Johnson's testimony of applying a 1.5 acre-feet-per-year standard to the rights was based on his own expert knowledge, but he admitted it was less than the current DNRC standards. Johnson further tied his proffered standard to his testimony about the appropriate irrigable acreage that Eldorado should be allowed. While the Master thoughtfully outlined his rationale as to why he accepted Johnson's credibility over the others' we conclude that he misapprehended the effect of the evidence because the purpose of a volume determination is to reflect historic beneficial use, and Johnson's

---

[8] Judge McPhillips testified the one acre-foot amount was a general rule of thumb, not a hard-and-fast rule. If water users under the *Perry* decree used more than one acre-foot then they ran the risk of being shut off. Logically, it was during dry years when marshaling was more difficult and water users logged complaints.

standard admittedly, and later verified, was not grounded in anything other than his own guess. *McDonald*, 220 Mont. at 521, 532, 722 P.2d at 599, 606.

¶33 In this case it seems it is not the standard itself that is fundamentally problematic to the parties, but it is the combination of Johnson's proffered standard and its application to the number of irrigable acres that the Master utilized to determine the volume of the four rights.[9] It was these two independent elements that were used to generate the maximum volumes.[10] Regardless, we have not been asked to determine whether the irrigable acreage within the place of use is correct, but to determine whether the volume quantification made by the Water Court is in error. We hold it is not. We ultimately agree with the Water Court's conclusion that none of the parties were able to successfully meet the burden of proof to establish a historic volume quantification for the four rights

---

[9] The Master declined to adopt the acreage figure Johnson testified appropriately reflects the number of acres Eldorado has historically irrigated. The Master found the most credible evidence showed Eldorado should be limited to irrigating 12,550 acres annually for all four rights. The Water Court found the Master's determination was based on substantial evidence and affirmed his determination.

[10] In regard to the volume determination, the Master determined 6,000 acres were irrigated under the Eldorado Right based on Eldorado's proposed findings of fact and conclusions of law it submitted during the *Perry* litigation. Additionally, the Master determined 900 acres, separated amongst the remaining three named rights, were irrigated based on Johnson's testimony regarding the analyses of the rights. The Master then applied Johnson's 1.5 acre-feet volume standard to the total acreage and ultimately concluded Eldorado's four rights are limited to 10,350 acre-feet per year, and gave each right a separate volume maximum. If the Master were to have applied Johnson's standard to the number of acres he determined could be annually irrigated the volume limit would equal 18,825 acre-feet per year. However, we need not address this mathematical curiosity. The Water Court noted: "Irrigated acreage and volume are two separate elements of a water right. The Master's finding that Eldorado was limited by historic use to annual irrigation of 12,550 acres is not invalidated by, or conditioned upon, his selection of a specific volume. The Master's decision regarding maximum annual acreage is dependent on historic use, and does not become clearly erroneous because the volume identified for that acreage is objectionable to another party."

that is either greater than or less than the amount claimed on Eldorado's Statement of Claim.

¶34 Eldorado advances the argument that the volume determination is not in line with our precedent in *McDonald*. As previously stated, *McDonald* sets forth that expressions of quantifications of a water right, including volume and flow rate, are permissible to identify the limit of a water right so long as they are in line with the historical, unabandoned beneficial use of the water. *McDonald*, 220 Mont. at 529-30, 722 P.2d at 605-06. However, Eldorado fails to identify a way in which the volume determination it contests is counter to its historic, unabandoned beneficial use. Instead, Eldorado credibly established a historic volume in its Statement of Claim that no party, including Eldorado, was able to successfully rebut. In overruling the Master, the Water Court declined to enter a specific per-acre volume factual finding, which is not required by law, and we will not second guess its judgment in that regard. We do note the Statement of Claim set forth a volume quantification that is likely in line with the volume historically delivered to Eldorado under the *Perry* decree. We conclude that the Water Court's improper application of the standard of review to the Master's factual findings nonetheless produced the proper result, and we therefore uphold the Water Court's findings regarding volume.

¶35    *2. Did the Water Court err when it chose not to assign separate volume limits for each of Eldorado's four sets of combined irrigation and stockwater rights for the Eldorado, Truchot, Dennis, and Beattie Rights?*

¶36 LTJO argues the Water Court erred when it assigned one volume maximum for all four of Eldorado's named rights. It reiterated the concerns contained in the Master's

20

report regarding an expansion of Eldorado's place of use and argues a combined volume determination allows Eldorado's junior rights to be used out of priority. TCRC argues "[w]ithout a separate volume for each of the. . . acquired water rights, total diversions of these rights will be greatly enlarged beyond the original owner's use to the detriment of other water users."

¶37 A water right cannot be enlarged beyond the original beneficial use by the original appropriator to the injury of others. *Quigley v. McIntosh*, 110 Mont. 495, 505, 103 P.2d 1067, 1072 (1940). However, place or purpose of use may be changed, subject to the complaints of another user. *Quigley*, 110 Mont. at 505, 103 P.2d at 1072. The requirement therefore is for a pre-WUA water user to have protested and sought redress for an alleged injury caused by a change of purpose or place of use of another's water right. Here, the Master found Eldorado acquired all four rights by 1937.[11] From that point on Eldorado used all four rights to provide water to its stockholders. As discussed above, the purpose of the WUA and adjudication process is to determine with finality the extent of all water rights in the state as of July 1, 1973. Any changes made to a right prior to the WUA followed the no-injury rule, and after would require following the statutory procedures under the WUA. The record does not indicate, nor do the parties argue, that another user was injured by a change to any of the named water rights' purposes or places of use prior to the WUA.

---

[11] As addressed in Issue Three, the exact date is not definitively known for when Eldorado acquired all of the Truchot Right. It is known Eldorado purchased the majority of the Truchot Right in 1921 and Eldorado claimed full use of the right by the 1950s.

¶38     The rights at issue have long been comingled in many ways.  However, they each remain subject to the elements of a water right as determined by the Water Court (i.e., the decreed flow rates, periods of use, points of diversion, etc.), which are not at issue in this appeal.  Volume is an aspect of a water right that must still reflect historic beneficial use, but may be applied to a water right by the Water Court with discretion, as given to the court by statute.  *McDonald*, 220 Mont. at 532, 722 P.2d at 606; § 85-2-234(6)(b)(iii), MCA.  So long as the water right is constrained by its historic beneficial use, we hold the Water Court did not err by utilizing a combined volume limitation for Eldorado's four named water rights.  A water user who alleges injury caused by Eldorado's use retains the ability to pursue every remedy available to him under statute.

¶39     *3. Did the Water Court err when it limited the flow rate of the Truchot Right to 300 miner's inches instead of 225 miner's inches?*

¶40     Eldorado acquired 225 miner's inches of the Truchot Right in 1921.  TCRC argues there is no evidence that the remaining 75 miner's inches were transferred to Eldorado.  Therefore, TCRC argues the Water Court erred by failing to limit the Truchot Right's flow rate at 225 miner's inches.

¶41     While Eldorado was unable to produce a deed of transfer for the remaining 75 inches, the Master found substantial evidence supported the transfer by way of the Water Commissioner's records and State Water Resource Survey.  It is known that the 75 inches were originally retained by Truchot, and then transferred to another water user named Coffee until 1946.  Any competing water user's claim to the 75 inches of the right was addressed and resolved by the Master, and he determined no other party made claim to

the portion of the right on a Statement of Claim. The Water Commissioner's records and State Water Resource Survey reflect full use of the Truchot Right by Eldorado by the 1960s at the latest. The Master's finding was affirmed by the Water Court. Furthermore, Eldorado claimed the full 300 inches on its Statement of Claim, which the Water Court correctly stated is entitled to prima facie proof.

¶42 The Water Court is obligated to review the Master's factual findings for clear error. *Heavirland*, ¶ 14. The Water Court stated, "[i]n this case [the Water Commissioner's] records constitute substantial evidence of use of the entire Truchot [R]ight by Eldorado." We review de novo whether the Water Court applied the appropriate standard of review. *Skelton Ranch, Inc.*, ¶ 26. In this case the Water Court plainly analyzed the Master's factual findings to determine whether substantial evidence supported his findings, and found no clear error. We conclude the Water Court applied the appropriate standard of review and we therefore affirm its decision.

## CONCLUSION

¶43 The Water Court's order regarding Water Court Case 41O-129B is affirmed.


/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA